# UNITED STATES DISTRICT COURT

### for the

### Northern District of New York

In the Matter of the Search of

*(Briefly describe the property to be searched*
*or identify the person by name and address)*

1) Black Samsung cellphone (S/N: -N915TGSMH)
2) Apple I-Phone 7 (FCC ID: BCG-E3091A)
3) Black/Grey Samsung cellphone (S/N: R58J33BJMGZ)
4) Black Apple I-Phone (FCC ID: BCG-E3087A)
5) White Samsung cellphone (S/N: RF8F30Z1FEJ)

)
)
)
)
)
)

Case No. 8:17-MJ-319 (GLF)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

1) Black Samsung cellphone (S/N: -N915TGSMH)
2) Apple I-Phone 7 (FCC ID: BCG-E3091A)
3) Black/Grey Samsung cellphone (S/N: R58J33BJMGZ)
4) Black Apple I-Phone (FCC ID: BCG-E3087A)
5) White Samsung cellphone (S/N: RF8F30Z1FEJ)

Currently located at the Champlain Border Patrol Station in Champlain, New York, as more fully described in Attachment A.

located in the _____ Northern _____ District of _New York_ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    X evidence of a crime;

    ☐ contraband, fruits of crime, or other items illegally possessed;

    X property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of: 8 U.S.C. 1324, 1325 and 18 U.S.C. 371.

| Code Section | Offense Description |
|---|---|
| *8 U.S.C. §§ 1324 and, 1325* | *Bringing in and harboring aliens, conspiracy to bring in and harbor certain aliens, and entry without inspection.* |

The application is based on these facts:

    X Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Trevor Kinblom, Border Patrol Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____July 10, 2017_____

City and state: _____Plattsburgh, New York_____

_____
*Judge's signature*

Hon. Gary L. Favro, U.S. Magistrate Judge
_____
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

<table>
<tr>
<td>

IN THE MATTER OF THE APPLICATION
FOR SEARCH WARRANTS FOR THE
FOLLOWING ELECTRONIC DEVICES:

1) Black Samsung cellphone
   (S/N: -N915TGSMH)
2) Apple I-Phone 7 (FCC ID: BCG-E3091A)
3) Black/Grey Samsung cellphone
   (S/N: R58J33BJMGZ)
4) Black Apple I-Phone (FCC ID: BCG-E3087A)
5) White Samsung cellphone (RF8F30Z1FEJ)

Currently located at the Champlain Border Patrol
Station in Champlain, New York

</td>
<td>

No.  8:17-MJ-319  (GLF)

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH
WARRANT**

</td>
</tr>
</table>

I, Trevor Kinblom, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Border Patrol Agent of the United States Border Patrol (USBP), and have been so employed since August 10, 2010.  Currently, I am assigned to the Champlain, New York Station. I make this affidavit in support of an application for a search warrant authorizing the search of: 1) a black Samsung cellphone; 2) an Apple I-Phone 7; 3) a black/grey Samsung cellphone; 4) a black Apple I-Phone; and 5) a white Samsung cellphone, as more fully described in section 4 (collectively referred to as the "SUBJECT ELECTRONICS"), which are currently in law enforcement's possession, and the extraction from the SUBJECT ELECTRONICS of the electronically stored information, more fully described in sections 14 through 16.  I make this affidavit based upon my personal knowledge and upon information received by me from other law enforcement officials.

−1−

2.      I have personally participated in the investigation of the offenses set forth below.  As a result of my participation and review of past and present reports made by Agents of the USBP, I am fully familiar with the facts and circumstances of this investigation. The statements and facts contained in this Affidavit are based upon my personal participation in this investigation, information provided by Agents of the USBP, analysis of documents, my experience and training as a Border Patrol Agent with the USBP, and the experience and training of other Agents involved in this investigation.

3.      Since this Affidavit is being submitted for the limited purpose of securing authorization to execute search warrants on various electronic devices, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish a requisite foundation for obtaining authorization to execute the search warrants.

**IDENTIFICATION OF THE SUBJECT ELECTRONICS TO BE EXAMINED**

4.      The property to be searched is one black Samsung cellphone (S/N: -N915TGSMH), one Apple I-Phone 7 (FCC ID: BCG-E3091a), one black/grey Samsung cellphone (S/N: R58J33BJMGZ), one black Apple I-Phone (FCC ID: BCG-E3087A) and one white Samsung cellphone (S/N: RF8F30Z1FEJ) ("SUBJECT ELECTRONICS").  The SUBJECT ELECTRONICS are currently in storage at the United States Border Patrol Station in Champlain, New York.  Through my training and experience, I know that the SUBJECT ELECTRONICS have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT ELECTRONICS first came into the possession of the United States Border Patrol.

5.      The applied-for warrant would authorize the forensic examination of the SUBJECT ELECTRONICS for the purpose of identifying electronically stored data particularly described in sections 14-16.

## PROBABLE CAUSE

6.      On July 7, 2017 Champlain Border Patrol Agents received information regarding a possible smuggling attempt involving a blue Hyundai hatchback bearing a Maryland license plate. The vehicle had last been seen near the Bears Den restaurant in Hogansburg, New York where it had picked up two additional people.  The reporter relayed that the driver of the vehicle did not speak English very well.  The area in and around Hogansburg, New York is well known for its close proximity to the Canada/United States international boundary.  It has historically been heavily exploited by human and narcotics smugglers alike due to its intricate border and waterways, mixture of Native American reservation land as well as quick access and egress routes to and from the major metropolis's of Montreal, Quebec and New York City, New York.  Smugglers use the well-traveled roads between the two populous cities because it affords them a quick way to blend or get lost in massive amounts of legitimate traffic.  When last seen, the blue Hyundai hatchback was reportedly traveling east on New York State Route 37 toward Malone, New York.  About a half an hour after Champlain Agents received information about the vehicle, Champlain Border Patrol Agent (BPA) Daryl McElvene encountered a Maryland plated blue Hyundai Accent (hatchback) in Ellenburg, New York.  BPA McElvene observed the Hyundai make an abrupt turn from New York State Route 11 onto New York State Route 190 and proceed south at a fast rate of speed.  As per standard operating procedure, BPA McElvene ran the license plate of the vehicle and identified it as a rental vehicle.

−3−

Human and narcotics smugglers will often utilize rental vehicles during the commission of their crimes to avoid having their personal vehicle seized by the United States Government.   BPA McElvene initiated a vehicle stop on the blue Hyundai Accent.  During the vehicle stop, BPAs Daryl McElvene and Charlie Toledo performed an immigration inspection on all three occupants of the vehicle. The driver of the vehicle, later identified as Brayan GRANADOS-Betancourt, provided a Colombian passport with a valid United States B1/B2 visa.  However, the two passengers of the vehicle, later identified as Carlos OLIVAR-Varon (front passenger seat) and Marcelo CHAVEZ-Vera (backseat passenger) freely admitted to being Mexican citizens and being in the United States illegally.  All the subjects and the rental vehicle were transported to the Champlain Border Patrol station for further interviews and processing.

7.      At the Champlain Border Patrol Station all subjects' fingerprints and biometric data were entered in the e3/IDENT/IAFIS system.  The e3/IDENT/IAFIS system revealed GRANADOS has a B1/B2 United States Visa valid until 11/28/2017 and no criminal record.  Record checks confirmed OLIVAR is a citizen of Mexico and has not been given permission, nor does he possess documents, to be in or remain in the United States legally.  Record checks show OLIVAR entered Canada through Montreal-Pierre Elliot Trudeau International Airport on April 23, 2017.  Record check also confirm CHAVEZ is a citizen of Mexico and has not been given permission, nor does he possess documents, to be in or remain in the United States legally.

8. During a search of the subjects and their personal effects, agents discovered a black/grey Samsung cellphone in the right cargo pocket of OLIVAR's cargo shorts.  Agents also found an Apple I-Phone 7 in OLIVAR's sweat pants.  Agents searched the Hyundai and discovered a black Samsung cellphone located in the back rear seat, of which CHAVEZ claimed possession.  Agents

−4−

also discovered a black Apple I-Phone on the driver's seat and a white Samsung cellphone in a black bag by the center console of the Hyundai.  GRANADOS claimed possession of both cellphones. Based on my training and experience in this and other cross border criminal investigations I have been involved with, including smuggling investigations, individuals involved in smuggling often communicate via cellular telephones because of the transient nature of smuggling events, which requires coordination of movements to pick up and drop off aliens or contraband at designated times and places.  Additionally, individuals involved in smuggling often use a cellular telephone's GPS functions to search for and map out potential smuggling routes.   Also, functions of cellular telephones can be utilized by smugglers to collect intelligence on detection and interdiction efforts of Law Enforcement on smuggling routes, such as photo-reconnaissance and/or geo-tagging of detection devices or operations in those areas.

9.     The SUBJECT ELECTRONICS are currently in the lawful possession of the United States Border Patrol, and have been since the arrests on July 7, 2017.  Therefore, while the United States Border Patrol might already have all necessary authority to conduct a forensic examination of the SUBJECT ELECTRONICS, I seek this additional warrant out of an abundance of caution to be certain that further examination of the SUBJECT ELECTRONICS will comply with the Fourth Amendment and other applicable laws.

10.     Based on the foregoing, it is respectfully requested that a search warrant be issued for the SUBJECT ELECTRONICS which would allow for searches of all electronically stored information therein, including but not limited to: (1) listings of incoming and outgoing calls; (2) stored telephone and address directories; (3) direct connect and identification numbers; (4) all pictures and videos; (5) audio recordings relating to entry without inspection alien smuggling, and

transporting aliens and conspiracy to transport aliens; (6) all voice mail recordings relating to entry without inspection alien smuggling, and transporting aliens and conspiracy to transport aliens; (7) all GPS map or direction data; and (8) all instant messaging and related stored communications.

## TECHNICAL TERMS

11.     Based on my training and experience, I use the following technical terms to convey the following meanings:

     a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in

such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12.  Based on my training, experience, and research, I know that the cellular telephones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet

—9—

are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

14.    *Forensic evidence,* this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT ELECTRONICS were used, the purpose of their uses, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT ELECTRONICS because:

        a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        d.  The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team

and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT ELECTRONIS consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

16.    *Manner of execution.* Because this warrant seeks only permission to examine SUBJECT ELECTRONICS already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

17.      I submit that this affidavit supports probable cause for a search warrant authorizing

the examination of the SUBJECT ELECTRONICS described in section 4 to seek the items described

in sections 14-16.

Respectfully submitted,

Trevor Kinblom
United States Border Patrol

Subscribed and sworn to before me

On July 10, 2017

HON. GARY L. FAVRO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

IDENTIFICATION OF THE SUBJECT ELECTRONICS TO BE EXAMINED

     4.      The property to be searched is one black Samsung cellphone (S/N: -

N915TGSMH), one Apple I-Phone 7 (FCC ID: BCG-E3091a), one black/grey Samsung

cellphone (S/N: R58J33BJMGZ), one black Apple I-Phone (FCC ID: BCG-E3087A) and one

white Samsung cellphone (S/N: RF8F30Z1FEJ) ("SUBJECT ELECTRONICS").  The SUBJECT

ELECTRONICS are currently in storage at the United States Border Patrol Station in Champlain,

New York.  Through my training and experience, I know that the SUBJECT ELECTRONICS

have been stored in a manner in which their contents are, to the extent material to this

investigation, in substantially the same state as they were when the SUBJECT ELECTRONICS

first came into the possession of the United States Border Patrol.This warrant authorizes the

forensic examination of the SUBJECT ELECTRONICS for the purpose of identifying the

electronically stored information described in Attachment B.

## ATTACHMENT B

1.     All records on the SUBJECT ELECTRONICS described in Attachment A that relate to violations of 8 U.S.C. § 1324(a)(2)(a) and 8 U.S.C. § 1325, and involve Brayan GRANADOS-Betancourt, Carlos OLIVAR-Varon and Marcelo CHAVEZ-Vare, including:

      a.  Listings of incoming and outgoing calls with corresponding date/time of calls;

      b.  Stored telephone and address directories;

      c.  Direct connect and identification numbers;

      d.  Pictures and videos;

      e.  All audio recordings;

      f.  All voice mail recordings;

      g.  All location and GPS data;

      h.  All instant messaging and related stored communications;

      i.  All SMS messages and related stored communications; and

      j.  Any other notations or electronic storage of any kind.

2.     Evidence of user attribution showing who used or owned the SUBJECT ELECTRONICS at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

–3–

   a.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.